1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17

| | |
|---|---|
| BRITZ FERTILIZERS, | CASE NO.    1:10-cv-02051-AWI-MJS |
| Plaintiff, | ORDER GRANTING MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT |
| v. | (Doc. 28) |
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, | ORDER DIRECTING PLAINTIFF TO FILE FIRST AMENDED COMPLAINT |
| Defendants. | |

_____/

I.    **INTRODUCTION**

18
19
20
21
22
23
24
25
26
27

This matter is before the Court on a Motion for Leave to File First Amended Complaint filed by Plaintiff Britz Fertilizers, Inc. ("Britz"), on August 19, 2011. (ECF No. 28.) The Motion has been fully briefed and was argued before the Court on September 23, 2011. Attorneys Ted Frame and Joan Cotkin appeared on behalf of Plaintiff, Britz. Attorney W. Eric Blumhart appeared on behalf of Defendant Nationwide Agribusiness Insurance Company ("Nationwide").

The Court has considered Britz's Notice of Hearing (ECF No. 27), Motion (ECF No.

-1-

28), Declaration in Support of Motion (ECF No. 29), Request for Judicial Notice (ECF No. 30), Memorandum in Support of Motion (ECF No. 31), Proposed Order (ECF No. 32), Reply to Opposition (ECF No. 35) and two Supplements to the Reply (ECF Nos. 36 & 37). The Court also considered Nationwide's Opposition to Motion and the Declaration and Certificate of Record attached thereto (ECF No. 33) as well as Nationwide's Notice of Errata to Opposition (ECF No. 34).  Following the September 23, 2011 hearing, the Court re-reviewed the points and authorities in light of the arguments and authorities presented at the hearing.

Based thereon and for the reasons discussed below, the Court grants Plaintiff's Motion to Amend.

## II.   **RELEVANT FACTS**

This is an insurance coverage dispute.  Britz brought this action on November 4, 2010, seeking a declaration that Nationwide is obligated to indemnify Britz for an $8 million-plus California state court judgment rendered against Britz.  The judgment was entered on a crop loss claim which Britz asserts is covered under a commercial umbrella liability policy Nationwide issued to Britz.  Nationwide contends that the umbrella policy never was intended to and did not provide coverage for this loss.

Britz now seeks leave to amend the Declaratory Relief action and assert reformation, breach, and bad faith causes of action.

The facts material to this motion are not in dispute and are summarized as follows:

During the period at issue here, Britz was engaged in the business of advising farmers regarding use of agricultural chemicals.  It also sold and supplied various chemical for agricultural purposes. Prior to August 2001, Britz had been insured for liability purposes

-2-

by Mutual Services Insurance Companies ("Mutual").  The Mutual coverage included a one million dollar general liability and a fifteen million dollar umbrella policy.  Both policies covered Agronomists Errors and Omissions ("E&O").  Mutual stopped writing such coverage for Britz, and so in 2001 Britz asked defendant Nationwide to ensure it.

On August 31, 2001, Nationwide responded by providing Britz with a quote for $1 million general liability coverage, to include E&O liability, and $10 million umbrella coverage to "follow form".  Both coverages were to be provided for the period from September 10, 2001 to September 10, 2002.  Britz agreed to the terms and paid the requested premium.  The general liability and umbrella policies were delivered in November 2001.

On review of the policies, it was discovered that the umbrella policy as written did not provide Britz E&O coverage for the services Britz provided.  Specifically, review of the policies revealed that both the general liability and the umbrella policy explicitly excluded liability for professional services.  However, the general liability policy added an endorsement which added coverage for liability arising out of "soil consulting, crop consulting, and farm consulting". The umbrella policy did not have the latter endorsement.  The net result was that, as written, the umbrella policy excluded coverage for errors and omissions by Britz.

The parties respective agents discussed the issue.  Britz maintained that the parties had always intended the umbrella policy to cover E&O claims.  Britz also asserted, and still asserts, that when it accepted Nationwide's offer of coverage and paid the requested premium, it created an enforceable agreement that such E&O coverage would be provided in both policies.  Britz requested that  Nationwide reform the umbrella policy to extend its coverage to E&O claims and losses, i.e., provide coverage for the same type of losses as

-3-

provided for in the general liability policy.

By June 2002, Nationwide had declined Britz's request to reform the policy and provide such coverage.  It advised Britz that, in its view, E&O claims were never intended to be covered by the umbrella policy.

In July 2002, one of Britz's customers, Ahmad Skouti, and his lessor asserted a crop loss claim against Britz. On December 18, 2002, they filed suit against Britz in Fresno County Superior Court claiming, among other things, negligence and errors and omissions by Britz's advisors.

Meanwhile, the dispute between Britz and Nationwide regarding the scope of the umbrella coverage continued.  On February 10, 2003, Britz wrote and advised Nationwide of its intent to proceed with an action for declaratory relief and reformation of the umbrella policy if the E&O coverage was not added to it.

In April 2003, a Britz representative and Nationwide's regional director agreed that the E&O umbrella coverage issue "would remain open" pending resolution of the Skouti action.[1]  Britz subsequently was advised by a Nationwide representative that two claim files, one for the general liability claim and one for the Umbrella claim, existed and would remain open during the Skouti action.

In April 2005, judgment was entered against Britz in the Skouti action in the amount of $7,625,993.  Britz appealed.  Ultimately the judgment was affirmed and, in or about October, 2007, paid in full.  Nationwide paid $1 million under the general liability policy. Britz paid the remaining balance.

[1] The issue would be eliminated if Scouti were awarded one million dollars or less in damages; in that case the umbrella coverage would not be triggered.

On October 29, 2008, Britz and Nationwide entered into a Tolling Agreement under which the statute of limitations was tolled on any then-unexpired claim or cause of action "arising out of or relating to the Skouti Issues."  The tolling was to continue during pendency of Britz's suit against the manufacturer of the chemical Britz had used on the Skouti farm.

Thereafter, the Tolling Agreement expired by its own terms on November 7, 2010.

Three days prior to expiration of the Tolling Agreement, on November 4, 2010, Britz filed this action against Nationwide asserting a single cause of action for Declaratory Relief and alleging that Nationwide was obligated to indemnify Britz under the umbrella policy for the $8,379,043 Britz paid Skouti.  The action also seeks approximately $50,000 in post-verdict attorney fees and interest.

According to Britz, documents produced by Nationwide in the present litigation suggested that Britz had grounds to assert a claim against Nationwide for breach of the implied covenant of good faith and fair dealing, i.e., a bad faith claim.  On June 1, 2011, Britz filed, but then withdrew, a motion to amend to assert such a claim along with breach of contract and reformation causes of action.

The present motion was filed August 19, 2011.  In it Britz seeks leave to amend to assert causes of action for:  1) reformation of the umbrella policy to make it conform to the general liability policy and provide E&O coverage; 2) declaratory relief; 3) breach of contract; and 4) bad faith.

**III.**   **LEGAL STANDARD**

    **A.**   **Motion to Amend the Pleadings**

Federal Rules of Civil Procedure 15(a)(2) authorizes the Court to grant leave to

amend in a case at this procedural stage and directs:  "The court should freely give leave when justice so requires."  Both parties recognize the great liberality with which leave to amend is be granted  under Rule15(a)(2).  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F. 3d 1048, 1051 (9th Cir. 2003).  Generally, leave to amend should be given absent a showing of futility, undue prejudice, bad faith or dilatory motive by the moving party. <u>Foreman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Martinez v. Newport Beach City</u>, 125 F. 3d. 777, 785 (9th Cir. 1997).

Defendant Nationwide does not argue that it will suffer undue prejudice if Britz's motion to amend is granted. Nor does Nationwide assert Britz is acting in bad faith or with a purely dilatory motive in seeking leave to amend.

Instead, Nationwide opposes Britz motion to amend on the grounds that since the proposed reformation cause of action (and hence the breach of contract and bad faith claims facially dependent thereon) is barred by the applicable statute of limitation, amendment would be futile.

### B.    Futility of Amendment

Leave to amend may be denied if the amendment would be futile, or where the amended complaint would be subject to dismissal.  <u>Saul v. United States</u> 928 F.2d 829, 843 (9th Cir. 1991). On a motion to amend brought before the close of discovery, futility will exist only if no set of facts could be proved to show a valid claim.  <u>Miller v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir.  1988) (concluding that the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)).

Denial of leave to amend due to futility is rare. Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed. Netbula v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003) (*citing* Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial at 8:422 (The Rutter Group, 2002)).

## IV.   ANALYSIS

Nationwide contends, and Britz agrees, that an action for reformation of a contract is governed by California Code Of Civil Procedure section 338(d) which establishes a three year statute of limitations on:

> (d) An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.

Nationwide contends that this limitations period began running no later than June 2002, the month in which Britz acknowledges knowing that the umbrella policy as written did not include E&O coverage, and that the statutory period expired three years later in June 2005.

Nationwide also claims that regardless of whether the reformation claim is or is not barred, the breach of contract and bad faith claims can not go forward because such claims can not arise out of contract which did not exist at the time of its alleged breach and bad faith performance. Nationwide cites to R&B Auto Center, Inc. v. The Farmers Group, Inc., 140 Cal. App. 4th 327, 354 (2006), to the effect that when an insurance policy  as written provides no potential for coverage at the time a claim is made against it, the insurer may properly deny coverage without liability for failing to anticipate that the policy might

later be reformed to provide such coverage.

Britz responds that its statue of limitations was extended under principals of equitable estoppel or equitable tolling.  Specifically, it asserts that Nationwide's assurances beginning in April, 2003 (i.e., that the issue of whether Nationwide was obligated to provide E&O coverage under its umbrella policy "would remain open" and a separate file would be maintained on that claim during the pendency of the Skouti action) tolled the statue from April 2003 until approximately October 2007 when the Skouti judgment became final.  It was then tolled again from October 2008 until November 2010 pursuant to the terms of the parties written Tolling Agreement.  As a result, less than two years (i.e., the period from Britz learning in June 2002 of the issue until Nationwide's April 2003 assurances, plus the period between the October 2007 finalization of the  Skouti judgment and execution of the Tolling Agreement) had run when Britz filed suit in November 2010.  Even adding the additional ten months that expired between filing the original complaint and this motion to amend, Britz assets that the claims were filed within the three year statute of limitation period.

Thus, the threshold issue presented in this motion is whether Nationwide's reported representations that the coverage issue "will remain open" and Britz purported reliance thereon equitably tolled the running of the statute of limitation or equitably estopped Nationwide from asserting the statute of limitations defense.

A.    **Equitable Tolling**

In first party insurance claims, California law recognizes the doctrine of equitable tolling of the statue of limitations during the period between when the insured first gives notice of the claim as required by the policy and the time the insurer formally denies the

claim.  Prudential-LMI Com. Insurance  v. Superior Court, 51 Cal. 3d  674 (1990). In

addition, where the insurer incorrectly denies coverage, the statue is tolled until the

underlying case is finally resolved (on the principal that the insurer's duty to defend is an

ongoing one which continues until the underlying case is resolved by final judgment).

Lambert v. Commonwealth Land Title Insurance Company, 53 Cal. 3d 1072 (1991); see

also, Eaton Hydraulics Inc. v. Continental Casualty Company, 132 Cal. App. 4th 966 (2005)

(suggesting the principal is particularly applicable in the case of a demand for defense

made to an excess insurance carrier since the excess insurer's duty to defend does not

arise until the primary insurance coverage is exhausted.).

However, there is no equitable tolling where the insured's action is for reformation

of the insurance contract. North Star Reinsurance Corporation v. Superior Court, 10 Cal.

App.4th 1815 (1992).  North Star arose out of an underlying construction defects case in

which  the attorney defending the insured tendered defense of the underlying action to the

insured's primary carrier.  The attorney did not initially tender to the excess carrier because

he believed the primary insurance coverage would be sufficient to cover the claim.  Later,

realizing the potential for the primary coverage to be exhausted, he put the excess carrier

on notice of the claim.  The excess carrier responded with a full reservation of  rights to

deny coverage and identified various policy exclusions that might limit coverage.  About 15

months later, the attorney objected that the excess policy as issued had failed to  "follow

form" on the primary policy.  More than two years later, the  insured sued for declaratory

relief and reformation of the excess policy.  The insurer moved for summary judgment

asserting the action was time-barred by the three year statute in Code of Civil Procedure

section 338.  The trial court denied the motion for summary judgment finding that the

statute was tolled until the underlying construction case became final.  The court of appeals reversed.  It found there could be no factual dispute that the insured discovered the facts giving rise to the reformation cause of action when the insurer gave the insured notice that the policy as written excluded coverage.  The court distinguished the rule allowing tolling of an insurance dispute under an existing policy during the pendency of an underlying claim on the grounds that, absent reformation, the excess insurer had no duty to defend:  "The fact that a successful reformation **might** result in a determination, applicable sometime in the future, that there is excess coverage in the same case..." does not justify tolling the statute while the insured litigates the underlying  claim.  North Star Reinssurance, 10 Cal. App. 4th at 1825.  (Emphasis in original.)  The appellate court also concluded that assertion of a declaratory relief cause of action along with the reformation claim did not change the analysis.  It found that in such a case the declaratory relief cause amounted to nothing more than an alterative method of pleading a reformation claim; the sum and substance of the two were the same. Id. at 1826.

Except perhaps as discussed below, this Court finds no basis upon which to distinguish the facts, holding, or result in North Star Reinssurance from those in the present case.  Britz clearly knew, and acknowledges it knew, as early as June 2002 that the excess policy, as written, did not cover the Skouti claim.  The limitations period began to run then.  During the ensuing period and continuing through the present, there has not been in existence any excess policy under which  Britz could seek coverage.  Britz's only option was to seek reformation.  The doctrine allowing tolling of the statute of limitations, during the pendency of the underlying tort suit, against a carrier who failed  to defend under an existing policy has no applicability where the insured seeks to reform a policy which

otherwise clearly excludes coverage.  A contrary rationale "would toll the limitations period for a contract reformation in any case where the party seeking to reform the contract is being sued by another."  North Star Reinssurance, 10 Cal. App. 4th at 1824.  As in North Star Reinssurance, Britz, being sued and defended by one primary insurance carrier pursuant to that insurer's duty to defend, simply seeks to reform an entirely separate insurance policy so that it too will provide coverage.  Absent reformation, the carrier who issued the latter policy undisputably has no duty to defend under that policy as written.

Nationwide's promise that the coverage issue would "remain open" might be claimed to constitute something less than a formal denial of Britz' claim such as to delay accrual of the statue of limitations.  Whatever academic value such an argument might have, it cannot survive in the face of Nationwide's and Britz' acknowledgment that there was no coverage under the umbrella policy as written.   In any event, the substance and potential effect of such an argument can be evaluated under the estoppel theory discussed below.

B.    **Equitable Estoppel**

Britz also claims that Nationwide's promise to leave the claim open led Britz reasonably to believe, and reasonably to rely upon the belief,  that there would be an amicable resolution of Britz's umbrella claim.  Britz reportedly did so rely and, as a result, asserts Nationwide is now equitably estopped to claim the limitations period expired during the period of such reliance.

California courts have long recognized the doctrine under which a defendant may be said to be estopped from raising a statute of limitations defense where the defendant's conduct induced plaintiff to forego bringing a timely action.  3 Witkin, Cal. Proc., Actions,

1  § 761 (5th ed., 2010). It may be available even where equitable tolling does not exist. Id.

2     In support of its  position that equitable estoppel protects its otherwise-late filing

3  here, Britz relies heavily on  two California Supreme Court decisions:  Prudential-LMI Com.

4  Insurance, 51 Cal. 3d  674, and Vu. v. Prudential Property & Casualty Insurance Co., 26

5  Cal. 4th 1142 (2001).

6

7     In Prudential-LMI, the California Supreme Court recognized and applied the theory

8  of equitable tolling in a first-party progressive property damage claim made under a

9  homeowner's insurance policy.  The court found that the limitation period was tolled during

10  the time between when the insured first gave notice of the claim as required by the policy

11  and the time the carrier formally denied the claim. The court also noted that under

12  established California law, waiver and estoppel can enable suit after expiration of the

13  statue of limitations where an insurer "intentionally relinquishes its right to rely on the

14  limitations provision."  Prudential-LMI, 51 Cal.3d at 690. (Citation omitted.) "[A]n insurer

15  that leads its insured to believe that an amicable adjustment of the claim will be made, thus

16  delaying the insured's suit, will be estopped from asserting a limitation defense." Id. at 691.

17  (Citation omitted.)

18

19     Even where the insurer has no intention to deceive the insured, an equitable

20  estoppel may arise if the insured reasonably is induced by the insurer's misrepresentation

21  of fact to refrain from taking action that would preserve its claim. Vu v. Prudential Property

22  & Casualty Co., 26 Cal. 4th at 1142-1153.  In Vu, a victim of the Northridge earthquake

23  made claim on his homeowner's policy. The insurer determined, and advised the insured,

24  that the damage to his home was less than the deductible. Later, after the then-applicable

25  statute of limitations had expired, the insured discovered additional damage and filed suit

26

27

-12-

in federal court to recover on the policy. The District Court granted summary judgment on statute of limitations grounds.  On appeal, the Ninth Circuit certified to the California Supreme Court the question of whether the equitable estoppel doctrine still served to protect an untimely suit in light of the California Court's earlier holding in Neff v. New York Life Ins. Co., 30 Cal. 2d 165 (1947).  Neff held that an insurer's denial of a claim based on the incorrect conclusion that the policy did not cover the loss did not toll the statute of limitations.  The California Supreme Court reaffirmed the Neff holding, but distinguished it's denial of liability from the misrepresentation of fact in Vu.  It concluded that the  insurer would be estopped from raising a statue of limitations defense if the insured could prove he reasonably relied on the insurer's misrepresentation of fact (i.e., as to the extent of the insured's damage) in not suing within the statutory period. Vu, 26 Cal. 4th at 1154.

        As to the latter case first, this Court agrees with Nationwide's counsel that Vu is limited to an insurer's misrepresentation of fact upon which an insured reasonably relies. We have no such misrepresentation of fact here.  We have instead an insurer who made statements to its insured as to the insurer's  intentions for handling a disputed claim.  At most, such statements may be considered on the issue of whether they were sufficient to reasonably have induced the insured to forego filing suit in a timely fashion under the principals discussed in Prudential-LMI Com. Insurance, 51 Cal. 3d  67.

        Plaintiff's proposed pleading, though broad, suggests the possibility of a claim that Defendant is estopped from asserting a limitation defense.  The First Amended Complaint asserts that during a telephone conversation, a regional director for Defendant stated that the E&O coverage coverage issue would remain open pending resolution of the Skouti Action. (First Am. Compl. at ¶ 36.) Plaintiff also asserts that conversations were had with

one of Defendant's new claim representatives who stated that Defendant had separate files for the general liability claim and the umbrella claim and that both files remained open. (Id., ¶ 38.) Plaintiff claims that it relied on the statement to delay filing the present action.

Whether such statements were sufficient to lead this Plaintiff's counsel and this Plaintiff "to believe that an amicable adjustment of the claim will be made" or otherwise created an estoppel under Prudential-LMI Com. Ins., 51 Cal. 3d at 690, is a question of fact not appropriate for resolution on a motion to amend. On a motion to amend brought before the close of discovery, futility will exist only if no set of facts could be proved to show a valid claim. Miller, 845 F.2d at 214. Under Miller the proper test or determining the legal sufficiency of a proposed amendment is identical to that used when considering the sufficiency of a pleading challenged under Federal Rule of Civil Procedure Rule 12(b)(6). Id.

Rule 12(b)(6) provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). To survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only

1
2

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (citations omitted).

3
4
5
6
7
8
9
10
11
12

Here, questions of fact exist as to whether, under all applicable circumstances (not all of which are before this Court now), Defendant's affirmative actions were sufficient  to constitute a relinquishment of its right to rely on the limitations defense.  Prudential-LMI Com. Ins., 51 Cal. 3d at 689. Under the low threshold applicable on this motion, Plaintiff has presented sufficient facts to support a plausible argument that equitable estoppel might apply. On this basis alone the Court finds that the motion to amend must be granted. Consideration of the merits of the proposed amended pleading shall be deferred until after the amended pleading is filed and challenged. Netbula, 212 F.R.D. at 539.

13

## C.    **BREACH OF CONTRACT**

14
15

Britz also seeks leave to amend to assert causes of action for breach of contract and breach of the covenant of good faith and fair dealing implied in the contract.

16
17
18
19
20
21
22

The contract which Britz claims was breached was that created by Nationwide's offer to provide umbrella coverage which "followed form," i.e., covered the same claims and losses covered by the general liability policy, and Britz's acceptance of that offer and performance of its obligation to pay the premium for the policy.  To the extent a contract was created, it was breached no later than June 2002.  By that month Britz had received the umbrella policy and discovered that it did not provide the promised coverage.

23
24
25
26
27

Britz motion to amend to assert claims of breach of contract and breach of the implied covenant of good faith and fair dealing are intertwined with the claim of reformation of the contract. Britz agues that the insurance contract must be reformed and that Nationwide should be ordered to pay extra-contractual damages for failing to abide by the

terms of that reformed contract.

Nationwide asserts that the claims should not be allowed to proceed on the above claims based on R&B Auto Center, Inc v. The Farmers Group, Inc., 140 Cal. App 4th 327 (2006). Nationwide argues that Britz must wait until after the contract has actually been reformed before it can bring an action for breach of the contract. R&B Auto Center, Inc. v. Farmers Group, Inc., 140 Cal. App. 4th at 353-354. The case law and prudential considerations support Nationwide's arguments in part. R&B Auto held that equity required rejecting a bad faith breach of contract claim based on a potential reformation in that particular case, but did not address whether this conclusion applied to a breach of contract claim. Id. at 353-354. Furthermore, the R&B Auto court recognized that a breach of contract action could arise from a reformation of the contract. Id. at 339, n. 11. If the Court finds later in this litigation that the contract should be reformed, then Britz could assert a claim for breach of the reformed contract. Dismissing this claim would force Britz to wait to see if the Court would reform the contract and, if it did, then bring a second suit to recover for breach. This would be unduly inefficient and wasteful.

Regarding the bad faith claim, this Court need not and will not reach the issue of whether, given the holding in R&B Auto, there any circumstances under which one can sue for bad faith breach of a reformed contract where the alleged bad faith occurred before the reformation.  The proposed pleading, perhaps benefitting from vagueness and broad incorporation by reference, arguably alleges bad faith in the alleged breach of the promise that the umbrella policy would "follow form."  The Court cannot at this stage of the pleading find such a claim futile in light of R&B Auto or otherwise.

1

**V.     ORDER**

2

3        Based on  consideration of the declarations, pleadings, and exhibits to the present

motion, the Court ORDERS as follows:

4

5        1. Plaintiff's Motion for Leave to File a First Amended Complaint be GRANTED; and

6        2. Plaintiff is hereby ordered to file the First Amended Complaint within ten (10)

7        days of the service of this order.

8

9    IT IS SO ORDERED.

10

11   Dated:    October 27, 2011          /s/ *Michael J. Seng*

12                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27